UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
AGCS MARINE INSURANCE COMPANY; :
WEATHERFORD ARTIFICIAL LIFT SYSTEMS,
LLC; :
                   Plaintiffs,
              v. : **VERIFIED COMPLAINT**
                                 **IN ADMIRALTY**
M/V IMABARI LOGGER (bearing International :
Maritime Organization No. 9663855), her engines, **(In Rem and In Personam)**
tackle, boilers, etc., *in rem*; DANMAR LINES LTD;
DANMAR LINES AG d/b/a DANMAR LINES :
LTD., DANZAS CORPORATION d/b/a DANMAR
LINES LTD. *in personam*,

                   Defendants.
-----------------------------------------------------------------------x

Plaintiffs AGCS Marine Insurance Company ("AGCS") and Weatherford Artificial Lift Systems, LLC ("Weatherford"), by and through the undersigned counsel, allege as follows for their Complaint against Defendant M/V IMABARI LOGGER, *in rem*, (the "Vessel") and Defendants Danmar Lines Ltd., Danmar Lines AG d/b/a Danmar Lines Ltd., and Danzas Corporation d/b/a Danmar Lines Ltd., (collectively "Danmar Lines") *in personam*:

### Nature of the Action

1. This admiralty action arises from loss overboard and damage to cargo during an ocean voyage from China to the United States. As described in the annexed Schedule A, which is incorporated herein by reference, the cargo consisted of 50 Rotaflex oil production pumping units with a CFR value of $5,853,628.35 (hereinafter "the Shipment"), of which 26 were lost overboard and 21 sustained damage.

## Jurisdiction and Venue

2. The action involves admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and is within the Court's admiralty and maritime subject matter jurisdiction pursuant to 28 U.S.C. § 1333.

3. This Court also has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as the claims in suit arise in whole or in part under federal law, including but not limited to federal common law, and/or are supplemental claims to certain of the foregoing claims within the meaning of 28 U.S.C. § 1367.

4. The claims against the carrying vessel *in rem* are also based on Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

5. Venue is proper based on the Southern District of New York forum selection clause in the Danmar Lines Sea Waybill for the Shipment. Danmar Lines has consented to the jurisdiction of this Court by virtue of said forum selection clause.

6. The M/V IMABARI LOGGER is subject to the Court's *in rem* jurisdiction based on the protection and indemnity club Letter of Undertaking dated April 7, 2022 which requires *inter alia* an appearance in this Court on behalf of the Vessel, the posting herein of a bond on demand of Plaintiffs, and the payment of any final decree of the Court up to the specified amount. The Vessel has consented to the jurisdiction of this Court by virtue of the Letter of Undertaking and therefore is now and will be during the pendency of this action within the jurisdiction of this Court.

**The Parties**

7.Plaintiff Weatherford is a Delaware limited liability company with a principal place of business in Houston, Texas, and was at all material times the purchaser, owner, and importer of record of the Shipment, the named consignee on the Danmar Lines Sea Waybill, and a Merchant as defined therein.  At all material times Weatherford had title to and risk of loss of the Shipment.

8.Plaintiff AGCS is an Illinois corporation with its principal place of business in Chicago, Illinois, and was at all material times the insurer of the Shipment. AGCS sues herein as subrogee of Weatherford based on its payments to date  for the insurance claim arising from the nondelivery, loss and damage to the Shipment. AGCS is authorized and entitled to take all necessary and lawful steps to protect and pursue recovery rights on its own behalf and in the name of, and on behalf of, Weatherford.

9.Upon information and belief Defendant M/V IMABARI LOGGER is a 23,452 gross tonnage bulk carrier, built in 2014, bearing International Maritime Organization No. 9663855, and at all material times was engaged in the business of the international and interstate carriage of cargo by sea for hire.

10.Upon information and belief Defendant Danmar Lines Ltd. (and/or Danmar Lines AG and Danzas Corporation each doing business as and/or also known as Danmar Lines Ltd.)  is represented to be a corporation organized under the laws of a foreign sovereign with a principal place of business at Peter Merian-Strasse 88, P.O. Box 2680, 4002 Basel, Switzerland, and a registered agent for service of process in care of Danzas Corporation, 1210 South Pine Island Road, Plantation, FL 33324.

11. Upon information and belief at all material times Danmar Lines was engaged in the business of a non-vessel operating common carrier registered with the Federal Maritime Commission and issuing bills of lading and/or sea waybills for the carriage of cargo for hire aboard ocean-going vessels moving in international and interstate commerce.

12. In said capacity Danmar Lines is charged with the duties, obligations, and liabilities of a contractual ocean carrier in addition to assuming those of its subcontractors, including but not limited to the Vessel and its owners and operators it hired with respect to the Shipment.

**The Relevant Facts**

13. For specified consideration, including ocean freight charges and other fees, Danmar Lines and the Vessel contracted to provide specialized services and carry the Shipment from the place of receipt in Tianjin, China, to the intended place of delivery in Everett, Washington.

14. In or about January 2022 at or near Tianjin, China, the Shipment was tendered to Danmar Lines and the Vessel, and/or entities acting on their behalf, in good order and condition and in every respect fit and suitable for the intended transportation.

15. The Rotaflex pumping units which comprised the Shipment were not packaged, i.e. they were shipped as bare equipment without packing material or covering of any kind, and were in good order and condition when delivered in this manner into the custody of Danmar Lines and the Vessel.

16. Upon information and belief, Defendants had the opportunity to verify the good order and condition of the individual Rotaflex pumping units upon receipt and as each item of cargo was being loaded and stowed aboard the Vessel.

17. Defendants stowed and carried the Shipment "on deck" (i.e. not in any hold or cargo space below deck).

18. Danmar Lines Sea Waybill SHAD92066 dated January 18, 2022 was issued for the Shipment.

19. The Sea Waybill identifies Danmar Lines Ltd. (FMC Org. No. 028623) as the Carrier, Weatherford as the Consignee, and the M/V IMABARI LOGGER as the carrying vessel.

20. The Sea Waybill states that the 50 pumping units were "SHIPPED ON BOARD 18-JAN-22" and refers to stowage on deck.

21. The Sea Waybill disclosed the Shipment's weight of 1,427,700 kilograms [1427.7 tons] and measurement dimensions of 6,083.700 cubic meters ("CBM"), together with the following freight charge particulars:

| Freight and Charges | Quantity based on | Rate | Per | Prepaid |
|---|---|---|---|---|
| OCEAN FREIGHT | 6083.70 | 203.00 | CBM | USD1234991.10 |

22. As stated in the Sea Waybill, the Danmar Lines freight charges in the amount of USD 1,234,991.10 were calculated and billed based on 6,083.70 CBM freight units at a cost of $203 per unit (6,083.70 x 203).

23. The terms of carriage included underhook/underhook liner terms and the responsibilities of Defendants included, but were not limited to, the nondelegable duty to properly receive, load, stow, lash and secure the cargo and to provide all necessary equipment for this purpose (including but not limited to securement fittings, turnbuckles,

d-rings, shackles, chains, cables and lashing gear) in addition to the duties to provide a seaworthy and cargoworthy vessel and to safeguard and care for the Shipment.

24. During the voyage Weatherford was notified by email dated January 31, 2022 that the Vessel's master reported the loss overboard of seventeen (17) Rotaflex pumping units.

25. A subsequent communication to Weatherford during the voyage represented that a total of twenty six (26) Rotaflex pumping units were lost overboard and another "10 plus units on board" sustained various degrees of damage.

26. At the discharge port inspections were conducted aboard and alongside the Vessel by a surveyor appointed by or on behalf of Plaintiffs.

27. Upon information and belief there was evidence aboard the Vessel that the stowage and lashing of the Rotaflex pumping units was not properly executed, that the lashing gear and equipment, including but not limited to undersized turnbuckles, was in poor condition and otherwise inadequate for the nature of the cargo and the subject voyage, and that these failures were a direct cause of the loss overboard of the 26 Rotaflex pumping units and the damage to others during the voyage.

28. Upon information and belief there was also evidence that the securing arrangements aboard the Vessel were not in compliance with good practices from the code of safe practices for cargo securing.

29. Weatherford also learned after the voyage that Danmar Lines and/or entities acting on its behalf, failed to arrange required pre-voyage survey inspections of the lashing, securing and stowage arrangements for the Shipment on the Vessel.

30. There has been no delivery of any kind of the 26 Rotaflex pumping units reported lost overboard during the voyage.

31. Of the Rotaflex pumping units which were delivered in damaged condition 14 could not be used for intended purposes and were deemed constructive total losses.

32. Another 7 Rotaflex pumping units required repairs as a result of the damage sustained during the voyage.

33. The loss of, and damage to, the Rotaflex pumping units in the Shipment was a violation of the contracts of carriage and/or the Defendants' duties under federal common law and the general maritime law.

34. Weatherford presented its insurance claim for the cargo nondelivery, loss and damage to AGCS. In accordance with the terms and conditions of the insurance policy AGCS has made, and/or is in the process of making, payments to Weatherford totaling $4,882,772.60 and is subrogated to Weatherford's claim to the extent of the payments.

35. The nondelivery, loss and damage to the Shipment was not caused by any act or omission of Weatherford or AGCS but instead was caused by the unseaworthiness of the Vessel, improper stowage, and the negligence, fault, breaches of duty, or breaches of contract or warranty of Danmar Lines and/or entities acting on its behalf.

36. By reason of the premises, Plaintiffs have a maritime lien on the Vessel and seek full and complete execution against the Letter of Undertaking security issued by the Vessel's protection and indemnity club.

37. Plaintiffs sue on their own behalf and as agents and trustees on behalf of any other entity which may now have or hereinafter acquire an interest in this action.

38. Plaintiffs have fulfilled all conditions precedent required in the premises.

39. As a proximate result of the foregoing, Plaintiffs, and those on whose behalf they sue, have sustained damages in the amount of $5,364,620.60, as nearly as can presently be calculated, as a direct result of the nondelivery, loss and damage to the Rotaflex pumping units, no part of which has been paid although duly demanded.

40. Plaintiffs reserve all rights, remedies and causes of action under the Master Transportation Services Agreement dated February 10, 2015.

## Causes of Action
### FIRST CAUSE OF ACTION
### Breach of Maritime Contract and Federal Common Law
(As Against Danmar Lines)

41. Plaintiffs repeat and incorporate by reference paragraphs 1 through 40 of this Complaint as if they were fully set forth and realleged herein.

42. A Danmar Lines Sea Waybill identifying Danmar Lines as the Carrier and Weatherford as the Consignee was issued for the Shipment.

43. Other than a reference to outer surface dust, there was no relevant damage exception stated on the Sea Waybill and the Shipment was in actual good order and condition when received into Defendant's care custody and control.

44. Danmar Lines agreed, under a maritime contract of carriage, to properly load, stow, lash, carry, and care for the Shipment and to act as the bailee of the Shipment and to discharge it at Everett, Washington, in good order and condition.

45. By reason of the foregoing, Danmar Lines was a carrier of cargo for hire and breached its nondelegable duties as such under the Danmar Lines Sea Waybill, federal common law, and the general maritime law by failing to deliver 26 Rotaflex

pumping units received into its care, custody and control at place of receipt in China and by delivering 21 other Rotaflex pumping units in damaged condition at the place of delivery in the United States.

46. Such breaches included, without limitation one or more of the following: failure to properly perform the lashing and securing arrangements for the Shipment aboard the Vessel; failure to assure that the Vessel was seaworthy at the start of the voyage including with respect to the cargo lashing and securing equipment aboard the vessel; the improper use of undersized turnbuckles, and other securing equipment, which were not sufficient for the nature of the cargo in the Shipment and the subject voyage; failure to follow safe practices for cargo securing.

47. As a proximate result of the foregoing, Plaintiffs, and those on whose behalf they sue, have sustained damages in the amount of $5,364,620.60, as nearly as can presently be calculated, as a direct result of the nondelivery, loss and damage to the Rotaflex pumping units, no part of which has been paid although duly demanded.

## SECOND CAUSE OF ACTION
### Breach of Maritime Contract and Federal Common Law
(As Against the Vessel in rem)

48. Plaintiffs repeat and incorporate by reference paragraphs 1 through 40 of this Complaint as if they were fully set forth and realleged herein.

49. The Shipment was delivered to the Vessel in good order and condition and the individual Rotaflex pumping units were in all respects fit for the voyage.

50. Defendant Vessel agreed, under a maritime contract of carriage, to properly load, stow, lash, carry, and care for the Shipment and to act as the bailee of the Shipment and to discharge it at Everett, Washington, in good order and condition.

51. Under federal common law and the general maritime law Defendant Vessel is liable *in rem* to perform its nondelegable obligations under the Sea Waybill and/or all other underlying agreements constituting the contract of carriage.

52. Defendant Vessel received 50 Rotaflex pumping units in good order and condition at Tianjin, China.

53. Defendant Vessel failed to deliver 26 Rotaflex pumping units at Everett, Washington and delivered another 21 Rotaflex pumping units in damaged condition.

54. The aforesaid nondelivery, loss and damage to the Shipment constitutes a material breach of the contract of carriage and of the Vessel's duties under federal common law and the general maritime law to safely and properly load, stow, lash, carry, and care for the Shipment.

55. Such breaches included, without limitation one or more of the following: failure to properly perform the lashing and securing arrangements for the Shipment aboard the Vessel; failure to assure that the Vessel was seaworthy at the start of the voyage including with respect to the cargo lashing and securing equipment aboard the vessel; the improper use of undersized turnbuckles, and other securing equipment, which were not sufficient for the nature of the cargo in the Shipment and the subject voyage; failure to follow safe practices for cargo securing.

56. As a proximate result of the foregoing, Plaintiffs, and those on whose behalf they sue, have sustained damages in the amount of $5,364,620.60, as nearly as can presently be calculated, as a direct result of the nondelivery, loss and damage to the Rotaflex pumping units, no part of which has been paid although duly demanded.

## THIRD CAUSE OF ACTION

### Tort Damage to and Loss of Cargo: Negligence

(As against Danmar Lines and the Vessel)

57. Plaintiffs repeat and incorporate by reference paragraphs 1 through 40 of this Complaint as if they were fully set forth and realleged herein.

58. Danmar Lines and the Vessel owed Weatherford a duty of care to preserve and not lose or damage the Rotaflex pumping units in the Shipment.

59. Said Defendants were each responsible for properly manning, maintaining and repairing the Vessel, including but not limited to the equipment necessary for properly stowing and securing the cargo, and for otherwise exercising due diligence to ensure that the M/V IMABARI LOGGER was seaworthy and fit to carry the Rotaflex pumping units that were in good order and condition when delivered to and loaded aboard the Vessel for the subject voyage.

60. Danmar and the Vessel breached the aforesaid obligations and duties of care and this is confirmed by the evidence that the Rotaflex pumping units were not properly stowed, lashed and secured for the voyage and that this resulted in the claimed nondelivery, loss and damage to the Shipment.

61. The losses sustained by the Plaintiffs were caused by the negligence and fault of Danmar Lines and the Vessel, and/or their agents, representatives and independent contractors for whose acts and omissions they were responsible, including but not limited to the failure to maintain the M/V IMABARI LOGGER and its lasing and securing equipment in a seaworthy condition.

62. As a proximate result of the foregoing, Plaintiffs, and those on whose behalf they sue, have sustained damages in the amount of $5,364,620.60, as nearly as can

presently be calculated as a direct result of the nondelivery, loss and damage to the Rotaflex pumping units, no part of which has been paid although duly demanded.

## FOURTH CAUSE OF ACTION
### Breach of Bailment Obligations

(As against Danmar Lines and the Vessel)

63. Plaintiffs repeat and incorporate by reference paragraphs 1 through 40 of this Complaint as if they were fully set forth and realleged herein.

64. Defendant Danmar Lines and Defendant Vessel, or entities acting on their behalf, were acting as bailees of the Shipment at the time the claimed nondelivery, loss and damage occurred.

65. Defendants thereby, or through their contractors, agents, servants or sub-bailees, warranted and had a legal duty to safely keep, care for and deliver the Shipment in the same condition as when entrusted to it and to perform services as bailees or to ensure that those services were performed with reasonable care and in a workmanlike and non-negligent manner. Defendants also had a duty to ensure that the services provided for the Shipment were performed with reasonable care and in a non-negligent and workmanlike manner.

66. Defendants breached the aforesaid duties and obligation as bailees by failing to deliver 26 Rotaflex pumping units.

67. Defendants breached the aforesaid duties and obligation as bailees by delivering 21 other Rotaflex pumping units in damaged condition at destination.

68. As a proximate result of the foregoing, Plaintiffs, and those on whose behalf they sue, have sustained damages in the amount of $5,364,620.60, as nearly as can

presently be calculated as a direct result of the nondelivery, loss and damage to the Rotaflex pumping units, no part of which has been paid although duly demanded.

## FIFTH CAUSE OF ACTION
### False Sea Waybill
(As to Defendant Danmar Lines)

69. Plaintiffs repeat and incorporate by reference paragraphs 1 through 40 of this Complaint as if they were fully set forth and realleged herein.

70. Defendant Danmar Lines issued a false Sea Waybill and thereby committed a material deviation and fundamental breach of the carriage contract.

71. The Danmar Lines Sea Waybill for the Shipment falsely represented that the unpackaged and uncovered Rotaflex pumping units were "Packages."

72. As a result of the false Sea Waybill any defenses based thereon alleged by Danmar Lines are null, void and of no effect.

73. Plaintiffs, and those on whose behalf they sue, have sustained damages in the amount of $5,364,620.60, as nearly as can presently be calculated as nearly as can presently be calculated, as a direct result of the nondelivery, loss and damage to the Rotaflex pumping units, no part of which has been paid although duly demanded.

WHEREFORE, Plaintiffs AGCS Marine Insurance Company and Weatherford Artificial Lift Systems, LLC respectfully pray:

A. That process in due form of law issue against Danmar Lines Ltd., Danmar Lines A.G. d/b/a Danmar Lines Ltd., Danzas Corporation d/b/a Danmar Lines Ltd and against the M/V IMABARI LOGGER, her engines, tackle, boilers, etc. *in rem*, citing them to appear and answer all and singular the aforesaid matters;


B.    That the Court require full and complete compliance by the Vessel's protection and indemnity club with all obligations under the Letter of Undertaking including the filing of a verified statement of right and interest (claim of owner) to the Vessel and the filing of a bond upon demand of Plaintiffs;

C.    That judgment be entered against Danmar Lines Ltd., Danmar Lines A.G. d/b/a Danmar Lines Ltd., Danzas Corporation d/b/a Danmar Lines Ltd and against the M/V IMABARI LOGGER jointly and severally in the amount of $$5,364,620.60, plus prejudgment interest at the rate of 9% per annum.

D.    That Plaintiffs be afforded such other and further relief as warranted by justice, including an award of reasonable attorneys fees and all costs incurred in the prosecution of this action.

Dated: October 27, 2022

                              Respectfully submitted,

                              Law Office
                              David L. Mazaroli

                              *s/David L. Mazaroli*
                              _____
                              David L. Mazaroli
                              Attorney for Plaintiffs
                              250 Park Avenue – 7th Floor
                              New York, New York 10177
                              Tel.: (212)267-8480
                              Fax: (212) 732-3752
                              dlm@mazarolilaw.com

## SCHEDULE A

| | |
|---|---|
| Consignee/Merchant: | Weatherford Artificial Lift Systems LLC |
| Insurer/Subrogee: | AGCS Marine Insurance Company |
| Vessel and Voyage: | "M/V IMABARI LOGGER" Voy. IMLO57 |
| Port of Loading: | Tianjin, China |
| Port of Discharge (intended): | Everett, Washington |
| Danmar Lines Sea Waybill: | SHAD92066 dated January 18, 2022 |
| Invoice No.: | SLEXL2021-US22 |

Shipment: 50 Rotaflex pumping units described as follows in the invoice and packing list

| NO. | Description | P/N | PO # | Line # | Qty | Unit Price ($) | Total ($) |
|---|---|---|---|---|---|---|---|
| 4 | WFT PU, 1150 STD SHALE GREEN, METRIC | 2675470 | PO15892220 | 1 | 5 | $92,553.45 | $462,767.25 |
| 3 | WFT PU, 1100 STD SHALE GREEN , SHALE GREEN | 2674279 | PO15922442 | 2 | 5 | $90,746.40 | $453,732.00 |
| 3 | WFT PU, 1150 STD SHALE GREEN, METRIC | 2675470 | PO15922442 | 3 | 40 | $92,553.45 | $3,702,138.00 |
| | | | **Freight Charge** | | | | $1,234,991.10 |
| | | | **CFR** | | | | $5,853,628.35 |

| Description | Dimension(m) | Quantity | Gross Weight | Net Weight | Measurement |
|---|---|---|---|---|---|
| **WFT PU, 1100 STD SHALE GREEN , SHALE GREEN** | 13.56(L)X2.62(W)X3.10(H) | 5 Set | 138.0 MT | 138.0MT | 550.67 |
| **WFT PU, 1150 STD SHALE GREEN, METRIC** | 15.09(L)X2.62(W)X3.11(H) | 45 Set | 1289.7MT | 1289.7MT | 5533.03 |
| | | 50 Set | 1427.7 MT | 1427.7 MT | 6083.7 |

| | |
|---|---|
| Lost Overboard: | 23 Model 1150 and 3 Model 1100 |
| Damaged (constructive total losses): | 12 Model 1150 and 2 Model 1100 |
| Damaged (repaired): | 7 Model 1150 |

Claim Amount:    **$5,364,620.60**

## VERIFICATION OF AGCS MARINE INSURANCE COMPANY

Francesca M. Sykes, hereby declares as follows:

1. I am employed as a Senior Subrogation Claims Adjustor for AGCS Marine Insurance Company ("AGCS") and in said capacity I am authorized to make this verification and declaration on behalf of Plaintiffs.

2. I have read the foregoing Complaint and I am familiar with the contents thereof.

3. The same are true to the best of my knowledge, except as to those matters alleged upon information and belief and as to those matters I believe them to be true.

4. The sources of my information and the grounds for my belief are information, and documents contained in the files and electronic data of AGCS relating to the matters in suit.

Pursuant to 28 U.S.C. § 1746 I declare under penalty of perjury this 28 day of October 2022 that the foregoing is true and correct.

_____
Francesca M. Sykes

16

## VERIFICATION OF WEATHERFORD ARTIFICAL LIFT SYSTEMS, LLC

Javier B. Garcia, hereby declares as follows:

5. I am the Director of Risk Management and representative of Plaintiff Weatherford Artificial Lift Systems, LLC ("Weatherford") and in said capacity I am authorized to make this verification and declaration on behalf of Plaintiffs.

6. I have read the foregoing Complaint and I am familiar with the contents thereof.

7. The same are true to the best of my knowledge, except as to those matters alleged on information and belief and as to those matters I believe them to be true.

8. The sources of my information and the grounds for my belief are records, information, and documents contained in the files and electronic data of Weatherford relating to the matters in suit.

Pursuant to 28 U.S.C. § 1746 I declare under penalty of perjury this 28 day of October 2022 that the foregoing is true and correct.

_____
Javier B. Garcia