UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
AGCS MARINE INSURANCE COMPANY,                              :
et al,                                                      :
                                                            :    22 Civ. 9283
                                            Plaintiffs,     :
                                                            :    **OPINION AND ORDER**
                    -against-                               :
                                                            :
M/V IMABARI LOGGER et al,                                   :
                                                            :
                                            Defendants.     :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      Plaintiffs AGCS Marine Insurance Company ("AGCS") and Weatherford Artificial Lift Systems, LLC ("Weatherford") brought this action *in rem* against Defendants M/V IMABARI LOGGER, (the "Vessel"), and *in personam* against Defendants Danmar Lines Ltd., Danmar Lines AG d/b/a Danmar Lines Ltd., Danzas Corporation d/b/a Damar Lines Ltd. (together, "Danmar") and consolidated Defendant Air Express International USA, Inc. d/b/a DHL Global Forwarding ("Air Express"). Plaintiffs assert claims in admiralty for damages arising from the loss of and damage to Rotaflex pumping units (the "Rotaflex Machines") during the Vessel's transatlantic journey from China to the State of Washington. Defendants moved for summary judgment on all claims, or in the alternative, partial summary judgment to limit their liability. In a Report and Recommendation (the "Report"), Magistrate Judge Robert Lehrburger recommended that Defendants' motions be granted in part and denied in part. *AGCS Marine Ins. Co. v. M/V IMABARI LOGGER*, No. 22 Civ. 9283, 2024 WL 3928867, at *1 (S.D.N.Y. Aug. 23, 2024). Plaintiffs and Defendants Danmar and Air Express timely objected. For the following reasons, the Report is adopted in full.

I.     **BACKGROUND**

Familiarity with the Report, the underlying facts and procedural history is assumed. *See Insurent Agency Corp. v. Hanover Ins. Grp., Inc.*, No. 16 Civ. 3076, 2020 WL 1080774, at *1 (S.D.N.Y. Mar. 6, 2020). Below is a brief summary.

Plaintiff Weatherford contracted with Defendant Danmar for certain services related to the shipment of 50 Rotaflex Machines from China to the United States. Plaintiff AGCS is Weatherford's subrogated insurer. Certain of the machines were lost or damaged during shipment. Danmar was a carrier of the shipment and a Non-Vessel Operating Common Carrier ("NVOCC"); an NVOCC issues a bill of lading ("BOL") to the shipper and delivers the shipment to an ocean carrier for transportation. Danmar's role in the shipment was governed by its BOL (the "Danmar BOL"), while the Vessel's role was governed by a separate BOL issued by Pacific Basin HandySize (HK) LTD (the "Pacific Basin BOL").

Plaintiffs commenced this action for damages on October 28, 2022, against the Vessel and Danmar. Plaintiffs allege that Danmar and the Vessel breached federal common law and their contracts with Weatherford by failing to take proper care, resulting in loss of and damage to the Rotaflex Machines. Plaintiffs bring related negligence and breach of bailment obligations claims against Danmar and the Vessel. Plaintiffs also allege that Danmar issued a false sea waybill by falsely representing that the Rotaflex Machines were shipped as packages on its BOL.

Plaintiffs filed a separate action against Air Express in the United States District Court for the Southern District of Texas on November 3, 2022. Air Express provided certain freight forwarding and related shipping services to Weatherford pursuant to a Master Transportation Service Agreement ("MTSA"). Plaintiffs bring claims that Air Express breached its contract with Weatherford and was negligent by failing to assure that the Rotaflex Machines were shipped

securely. With the parties' consent, the actions were consolidated before this Court on May 10, 2023.

Danmar and Air Express filed a joint motion for summary judgment, seeking dismissal of all claims against them based on contractual exonerations of liability or, in the alternative, partial summary judgment to limit their liability according to provisions of the Danmar BOL and the MTSA, respectively. Imabari Logger Ltd., owner of the Vessel, filed a separate motion for summary judgment on behalf of the Vessel also seeking dismissal of the claims based on its exoneration of liability clause or, in the alternative, partial summary judgment limiting its liability to £100 per package pursuant to the Pacific Basin BOL. The motions for summary judgment do not address the merits of Plaintiffs' claims beyond the issue of whether the contractual exonerations or limitations of liability may apply.

Defendants' motions were referred to Judge Lehrburger for a report and recommendation. In the portion of the Report to which the parties do not object, the Report recommends denying summary judgment that would dismiss all claims against all Defendants based on their respective contractual exonerations of liability because the BOLs at issue are governed by the Harter Act, 46 U.S.C. §§ 30701- 30707,[1] and not the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. App. §§ 1300 *et seq*.,[2] and the exonerations of liability in the BOLs are void under the Harter Act and federal common law. Regarding the portions of the Report to which the parties object, the Report recommends granting partial summary judgment in favor of the Vessel and Danmar on their limitations of liability, finding that (1) Danmar could not rely on the Pacific Basin BOL to limit

---

[1] In 2006, Congress recodified the Harter Act, previously codified at 46 U.S.C. §§ 190-196, at 46 U.S.C. §§ 30701-07. *See* Pub. L. No. 109-304, 120 Stat. 1485 (2006).
[2] COGSA codifies the United States's adoption of the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading, August 25, 1924 (the "Hague Rules"). *Man Ferrostaal, Inc. v. M/V Akili*, 704 F.3d 77, 81 (2d Cir. 2012).

3

its liability but could rely on its own BOL's limiting provision, (2) the BOLs' liability limitation provisions are valid under the Harter Act and (3) each Rotaflex Machine is a "package" for the purpose of the liability limitation provisions. Finally, the Report recommends denying partial summary judgment in favor of Air Express on its proposed limitation of liability because the MTSA did not incorporate COGSA's $500 limit but rather is governed by the terms of its MTSA.

## II.   STANDARD

### A.  Summary Judgment

Summary judgment is appropriate when the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3] *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 148 (2d Cir. 2017).

In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021). "If there is any evidence in the record from which a reasonable inference could be drawn in favor of the [non-movant], summary judgment is improper." *Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transp. Auth.*, 11 F.4th 55, 64 (2d Cir. 2021).

---

[3] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

### B. Report and Recommendation

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1). Even when exercising de novo review, "[t]he district court need not, however, specifically articulate its reasons for rejecting a party's objections or for adopting a magistrate judge's report and recommendation in its entirety." *Morris v. Local 804, Int'l Bhd. of Teamsters*, 167 F. App'x 230, 232 (2d Cir. 2006) (summary order); *accord Rodriguez v. Berryhill*, No. 18 Civ. 0918, 2019 WL 5158721, at *4 (S.D.N.Y. Oct. 15, 2019).

"When a party makes only conclusory or general objections, or simply reiterates the original arguments made below, a court will review the report strictly for clear error." *Espada v. Lee*, No. 13 Civ. 8408, 2016 WL 6810858, at *2 (S.D.N.Y. Nov. 16, 2016); *accord TCA Television Corp. v. McCollum*, No. 15 Civ. 4325, 2018 WL 2932724, at *2 (S.D.N.Y. June 12, 2018). Similarly, where no specific written objection is made, "the district court can adopt the report without making a de novo determination." *United States v. Male Juv.*, 121 F.3d 34, 38 (2d Cir. 1997); *accord Shulman v. Chaitman LLP*, 392 F. Supp. 3d 340, 345 (S.D.N.Y. 2019) ("A district court evaluating a magistrate judge's report may adopt those portions of the report to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law."); *Thomas v. Arn*, 474 U.S. 140, 150 (1985) (finding that neither 28 U.S.C. § 636(b)(1)(C), nor the legislative history, indicates that "Congress intended to require district court review of a

5

magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings").

### C. Interpretation of Contract and BOLs

"When a federal court decides a maritime case, it acts as a federal common law court, much as state courts do in state common-law cases." *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 69 (2024). If a case is brought pursuant to a federal court's admiralty jurisdiction and the dispute is not inherently local, "federal law controls the contract interpretation." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 22-23 (2004); *accord Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 632 (2d Cir. 2016). Federal maritime common law is developed with reference to "direction from Congress, . . . judicial opinions, legislation, treatises, and scholarly writings." *Great Lakes Ins. SE*, 601 U.S. at 70. "When no established rule exists, and when the federal courts decline to create a new rule, federal courts apply state law." *Id.*; *see Nippon Yusen Kaisha v. FIL Lines USA Inc.*, 977 F. Supp. 2d 343, 349 (S.D.N.Y. 2013) ("Because we are aware of no federal statute that would govern the interpretation of the bills of lading at issue in this case, we will look to common-law principles of contract interpretation, and will occasionally cite to New York case law to the extent it elucidates such common-law principles.").

Federal law requires that "contracts for carriage of goods by sea . . . be construed like any other contracts: by their terms and consistent with the intent of the parties." *Norfolk S. Ry. Co.*, 543 U.S. at 31; *accord Red Hook Container Terminal, LLC v. S. Pac. Shipping Co.*, No. 19-0287, 2021 WL 5492964, at *1 (2d Cir. Nov. 23, 2021). "[A]n interpretation that gives a reasonable and effective meaning to all terms of a contract is preferable to one that leaves a portion of the writing useless or inexplicable." *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines*

6

*(UK) Ltd.*, 230 F.3d 549, 558 (2d Cir. 2000); *accord Red Hook Container Terminal, LLC*, 2021 WL 5492964, at *1.

"[A] motion for summary judgment may be granted only where the agreement's language is unambiguous and conveys a definite meaning." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 316 (2d Cir. 2006); *accord Iota Shipholding Ltd. v. Starr Indem. & Liab. Co.*, No. 16 Civ. 488, 2017 WL 2374359, at *5 (S.D.N.Y. May 31, 2017). A contract is ambiguous if "it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Am. Home Assurance Co.*, 446 F.3d at 316. If the "language of the contract is clear and unambiguous, the contract is to be given effect according to its terms, and those terms may be the basis for summary judgment." *Id.*

## III. DISCUSSION

The Report is thorough and well-reasoned. The portions of the Report to which there are objections are reviewed de novo, and the remainder is reviewed for clear error. Under this standard, the Report is adopted in full.

### A. Partial Summary Judgment on Limitation of Liability

The Report recommends granting partial summary judgment to Danmar and the Vessel on their arguments that their liabilities should be limited to $500 per package and £100 per package, respectively. Plaintiffs' and Danmar's objections to this recommendation are overruled. The Report recommends denying partial summary judgment to Air Express on its argument that its MTSA incorporates COGSA's $500 per package liability limitation, and

7

instead recommends applying the MTSA's limitation of 8.33 Special Drawing Rights per kilo. Air Express's objection is overruled.

### 1. Danmar BOL Clause 8

The Report recommends granting partial summary judgment to Danmar on the basis that Clause 8.3.4 of the Danmar BOL limits its liability to $500 per package. Plaintiffs object that Clause 8.1.1 of that BOL provides that liability must be determined and limited pursuant to United States law, and therefore requires application of the Harter Act, which contains no limitation on liability, rather than application of the limitation in Clause 8.3.4. Plaintiffs' argument is unpersuasive.

Clause 8 of the Danmar BOL states:

> 8.1. The Carrier's liability in respect of any loss of or damage to the Goods . . . shall be determined and limited in accordance with the provisions of this clause 8 unless:
> 8.1.1 In the case of US Carriage, an international convention or national law (including US COGSA) compulsorily applies (**US Compulsory Legislation**), in which case the liability of the Carrier will be determined and limited in accordance with the provisions of such US Compulsory Legislation.

This clause requires the application of the liability limitation of $500 per package as provided in Clause 8.3.4, unless U.S. law -- here the Harter Act -- compulsorily applies, in which case "the provisions of the [Harter Act]" determine and limit Danmar's liability.

This exception to the $500-per-package liability limitation does not apply because the Harter Act has no provision that determines or limits the liability of a carrier. The closest it comes is a statement that, "[a] carrier may not insert in a bill of lading or shipping document a provision avoiding its liability for loss or damage arising from negligence or fault in loading, stowage, custody, care, or proper delivery. Any such provision is void." 46 U.S.C. § 30704. This provision prevents full exoneration of liability but does not address or prevent limitation of liability. *See In re Hapag-Lloyd Aktiengesellschaft*, 573 F. Supp. 3d 934, 963 n.31 (S.D.N.Y.

2021); *Fed. Ins. Co. v. Great White Fleet (US) Ltd.,* No. 07 Civ. 2415 (Lynch, J.), 2008 WL 2980029, at *11 (S.D.N.Y. Aug. 1, 2008) (citing *The Ansaldo San Giorgio I v. Rheinstrom Bros. Co.,* 294 U.S. 494, 496-97 (1935)). Plaintiffs' objection makes clear that they do not invoke this provision to suggest that the Clause 8 limitation of liability is invalid, but instead argue, "As the Harter Act has no monetary limitation, [the Report] should have concluded that Danmar is not entitled to limitation of any kind." This is patently incorrect, as it would mean that the Act's silence on any subject not addressed in the few sparse sections of the Act, 46 U.S.C. §§ 30701-30707, should be read as an intent to override any proscription on that subject. Notably, cases holding that the Harter Act does not prevent a limitation of liability also enforce limitations in BOLs equivalent to the $500 per package limitation here. *See, e.g.*, *Thyssenkrupp Materials NA, Inc. v. M/V Kacey*, 236 F. Supp. 3d 835, 842 (S.D.N.Y. 2017); *Fed. Ins. Co.,* 2008 WL 2980029, at *11.

Plaintiffs cite *J.C.B. Sales Ltd. v. Wallenius Lines,* 124 F.3d 132, 135-37 (2d Cir.1997), for the proposition that a clause paramount -- "which identifies the law that will govern the rights and liabilities of all parties to the bill of lading," *Sompo Japan Ins. Co. of Am. v. Union Pac. R. Co.*, 456 F.3d 54, 56 (2d Cir. 2006), *abrogated on other grounds by Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89 (2010) -- may be enforced even if it results in liability greater than $500. This is true, but irrelevant because that case did not apply or interpret the Harter Act. *J.C.B. Sales Ltd.,* 124 F.3d at 136 ("[T]he provisions at issue herein are not governed by the Harter Act . . . ."). As that case emphasizes, "The sole issue in the instant case is whether the parties intended to apply the higher liability limitation of the Hague Rules as enacted in the countries of shipment." *Id*. at 137. Unlike in *J.C.B. Sales Ltd.*, where the Hague Rules provided

9

an explicit limitation of liability, the Harter Act does not impose a liability limitation. As explained above, Clause 8.3.4 therefore provides the applicable limitation.

### 2. Pacific Basin BOL Clause 3

Partial summary judgment is granted to the Vessel because the liability limitation in Clause 12 of the Pacific Basin BOL limits the Vessel's liability to £100 per package, as the Report correctly concludes. Plaintiffs object that Clause 12 with its limitation should be considered "deleted" by Clause 3, which states that any provisions of the BOL that are contrary to the Hague Rules, or equivalent legislation of the Vessel's flag state, should be read as if they were deleted from the BOL. Plaintiffs' argument is incorrect because the limitation of liability in the Pacific Basin BOL is not contrary to the Hague Rules.

Plaintiffs cite the codification of the Hague Rules by the flag state, Hong Kong, as the correct source for the liability limitation. But the Hague Rules, like COGSA, expressly do not apply to on-deck cargo, like the Rotaflex Machines here, unless the parties have specifically contracted otherwise. Carriage of Goods by Sea Ordinance, (1994) Cap. 462, S, Art. I(c) (H.K.). The Hague Rules contain a liability limitation that, if applicable, would allow Plaintiffs a greater recovery from the Vessel, but the limitation applies only to "goods lost or damaged." *Id*. Art. IV.5(a). The Hague Rules define "goods" as "goods, wares, merchandise, and articles of every kind whatsoever except . . . cargo which by the contract of carriage is stated as being carried on deck and is so carried." *Id*. Art. I(c). The parties do not dispute that the relevant contracts of carriage -- i.e., the Danmar BOL and the Pacific Basin BOL -- state that the goods will be carried on deck and that they were carried on deck. Accordingly, the Hague Rules' limitation does not apply and is not "who[ll]y or part[l]y contrary" to Clause 12 of the Pacific Basin BOL. Because there is no conflict, Clause 12 with its liability limitation governs.

### 3. Liability Limitations Determined by "Package"

As discussed above, the Report recommends granting partial summary judgment to Danmar and the Vessel based on the limitation provisions in their respective BOLs. The Danmar BOL limits Danmar's liability to $500 per *package*. The Pacific Basin BOL limits the Vessel's liability to £100 per *package*. The Report does not improperly resolve a factual dispute in finding that the Rotaflex Machines were "packages" and not unpackaged "units." Plaintiffs object that the machines were referred to as "units" in the BOLs and argue that a factual dispute over the extent and purpose of the packaging would preclude summary judgment.

First, regarding how the machines are treated by the BOLs, "[t]he number appearing under the heading 'NO. OF PKGS.' is our starting point for determining the number of packages" and "unless the significance of that number is plainly contradicted by contrary evidence of the parties' intent, or unless the number refers to items that cannot qualify as 'packages,' it is also the ending point of our inquiry." *Seguros Illimani S.A. v. M/V Popi P*, 929 F.2d 89, 95 (2d Cir. 1991); *accord HDI Glob. Ins. Co. v. Kuehne + Nagle, Inc.*, No. 23 Civ. 6351, 2024 WL 4188345, at *2 (S.D.N.Y. Sept. 13, 2024). The Danmar BOL states, "50 Package(s)" under "Number and kind of packages: description of goods" and "50 Package(s)" under the section "Total No. of containers/packages." The Pacific Basin BOL similarly states, "50PACKAGES" under the column "Number and Kind of packages, description of goods," and under "TOTAL PACKAGES (IN WORDS)," states "SAY FIFTY PACKAGES ONLY." Both the Danmar BOL and the Pacific Basin BOL refer to the Rotaflex Machines primarily as "packages," including other references under "Ship's Remarks" stating "Dust on the outer surface affected all packages" and "of which 50PACKAGES/ 1427.7MT on deck at Shipper's risk." The Danmar BOL also states "50 PKG" under "Container" and "Packages Mode."

11

As the Report notes, each BOL under "Ship's Remarks" references "50 units" being "shipped on deck at shippers/charterers risk and responsibility without liability on the part of the vessel/owners for any expenses, delays, loss or damage however caused and even if caused by owners' negligence or unseaworthiness of the vessel." The lone reference to "50 units" in Ship's Remarks is insufficient to provide evidence that "plainly contradict[s]" the multiple references to packages in the Number of Packages sections. *See Mapfre Atlas Compania de Seguros S.A. v. M/V LOA*, No. 15 Civ. 7876, 2017 WL 3332234, at *4-5 (S.D.N.Y. Aug. 3, 2017) (holding one mention on a BOL of "989 pieces computers parts" did not overcome multiple mentions of goods being one package, especially as no evidence demonstrated the goods were transported in 989 separate packages instead of one container). Even considering the mention of "50 units" does not change the fact that the BOLs identify 50 as the relevant number, resulting in the same liability limitation under the BOLs if a "unit" is considered to mean a "freight unit." *See FMC Corp. v. S.S. Marjorie Lykes*, 851 F.2d 78, 80 (2d Cir. 1988) (noting that "the 'customary freight unit' is not the standard unit of measure used in the industry, but the actual freight unit used by the parties to calculate freight for the shipment at issue" and "[t]o determine the customary freight unit for a particular shipment, the district court should examine the bill of lading . . . ."); *accord Mapfre Atlas Compania de Seguros S.A.*, 2017 WL 3332234, at *5.

Plaintiffs' reliance on *Bristow US LLC v. Wallenius Wilhelmsen Logistics, AS*, is unpersuasive because the BOL at issue in that case used the heading, "No. of units or packages," which created an ambiguity, which is not present in the BOLs here. *See* 369 F. Supp. 3d 519, 523 (S.D.N.Y. 2019). The Danmar BOL uses the heading "Number and kind of packages" and the Pacific Basin BOL uses "Number and Kind of packages, description of goods." Each of these headings is followed by the statement, "50PACKAGES." These BOLs do not contemplate

12

that the appropriate measure is anything other than a package, of which there were 50. *Cf. id.* ("In other words, [the BOL] does not commit between [package or unit]. It is therefore facially ambiguous as to whether the appropriate measure is a 'unit,' presumably a CFU, or a 'package.'").

Second, there is also no factual dispute that each machine qualified as a package. A package is "a class of cargo, irrespective of size, shape or weight, to which some packaging preparation for transportation has been made which facilitates handling, but which does not necessarily conceal or completely enclose the goods." *Allied Int'l Am. Eagle Trading Corp. v. S.S. Yang Ming*, 672 F.2d 1055, 1057-58 (2d Cir. 1982); *accord Hercules OEM Grp. v. Zim Integrated Shipping Servs. Ltd.*, No. 22 Civ. 02636, 2023 WL 6317950, at *8 (S.D.N.Y. Sept. 28, 2023). It is undisputed that, when shipped, each machine was prepared with certain packaging, including bubble wrap, foam, plastic bags, wire and zip ties; with internally placed wooden wedges and slats to buffer portions of the machines; and with hood guards, struts and support rails. This is more than sufficient "packaging preparation for transportation" to conclude that each Rotaflex Machine was a package, and no reasonable inference could be drawn otherwise.

Plaintiffs argue that these preparations do not render the machines packages because they neither conceal the machines nor facilitate handling. However, packaging preparations that ease transportation create packages, even if the preparations were not made solely to ease handling. *See Nichimen Co. v. M. V. Farland*, 462 F.2d 319, 334 (2d Cir. 1972) ("In short, the fact that the act of rolling and banding facilitates storage does not necessarily negate the possibility that it is also packaging preparation made to facilitate handling in transportation."); *Solar Turbines Inc. v. MV Alva Maersk*, 584 F. Supp. 32, 34 (S.D.N.Y. 1983) ("Courts have repeatedly recognized that packaging often serves more than one function, and that attempts to artificially classify the

13

single purpose of some portion of packaging are not sound policy."). As discussed above, concealment is unnecessary to render an item a package. *Allied Int'l Am. Eagle Trading Corp.*, 672 F.2d at 1057-58. The modifications made to the Rotaflex Machines to prepare them for transport rendered them "packages," the measure for the limitations of liability on which partial summary judgment to Danmar and the Vessel are based.

### 4. Clause 2.4 of Danmar BOL

As discussed above, the appropriate limitation of Danmar's liability is found in the Danmar BOL. The Report correctly concludes that Danmar may not rely on the lower limitation of liability contained in the Pacific Basin BOL. Danmar objects that the Report relies on a misreading of the relevant caselaw and Clause 2.4 of the Danmar BOL, which incorporates the liability limitations of any underlying BOL.

As an initial matter, Clause 2.4 allows Danmar to rely on an "underlying bill of lading," which is defined to include BOLs issued by sub-contractors. Sub-contractors are defined to include "owners, charterers and operators of Vessels (other than the Carrier), . . . and any direct or indirect sub-contractors, servants or agents thereof, whether in direct contractual privity with the Carrier or not." Pacific Basin owned the Vessel. As the owner of the Vessel, Pacific Basin is a sub-contractor, as defined in the Danmar BOL.

While Clause 2.4 would seem to allow Danmar to rely on the Pacific Basin BOL, Danmar may not do so because Plaintiffs did not have sufficient notice of the Pacific Basin BOL's terms such that Danmar may enforce its liability limitation against Plaintiffs. Defendants are correct that the presence of Clause 2.4 in the Danmar BOL distinguishes this case from *Royal Insurance Co. v. M.V. ACX RUBY*, No. 97 Civ. 3710, 1998 WL 524899 (S.D.N.Y. Aug. 21, 1998), and *American International Group Europe S.A. (Italy) v. Franco Vago International, Inc.*,

756 F. Supp. 2d 369 (S.D.N.Y. 2010). Those cases do not address the application of an explicit provision attempting to incorporate an underlying BOL's terms. The reasoning of *American International Group Europe S.A. (Italy)*, is nevertheless persuasive. There, the court held a freight forwarder could not rely on the forum selection clause from the BOL issued by the vessel owner because plaintiffs were not parties to that BOL, had no notice of that BOL's terms and the freight forwarder had no contractual rights under that BOL. *Am. Int'l Grp. Eur. S.A. (It.)*, 756 F. Supp. 2d at 377.

The only difference here is that Danmar arguably can assert a contractual right under the Pacific Basin BOL based on Clause 2.4 and, while Plaintiffs did not have actual notice of the Pacific Basin BOL terms, Plaintiffs had notice that Danmar may try to rely on the terms of any underlying BOL. Clause 2.4 also states that "copies of said terms of an Underlying Bill of Lading [are] available to the Merchant at any office of the Carrier upon request." But that notice to Plaintiffs is not enough to create a basis for Danmar to rely on the Pacific Basin BOL. "Where an offeree does not have actual notice of certain contract terms, he is nevertheless bound by such terms if he is on inquiry notice of them and assents to them through conduct that a reasonable person would understand to constitute assent." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019). Inquiry notice exists if "the contract terms were presented to the offeree in a clear and conspicuous way." *Id*. In the admiralty context specifically, the test for what constitutes reasonable communication of terms is whether the carrier "had done all it reasonably could to warn the passenger that the terms and conditions were important matters of contract affecting his legal rights." *Silvestri v. Italia Societa Per Azioni Di Navigazione*, 388 F.2d 11, 17 (2d Cir. 1968); *accord MTS Logistics, Inc. v. Innovative Commodities Grp., LLC*, 442 F. Supp. 3d 738, 748 (S.D.N.Y. 2020). Defendants cite no caselaw suggesting that similar clauses plus

15

the separate availability of unspecified BOLs with unspecified terms provide sufficient notice of the underlying BOL's terms.  The lack of "clear and conspicuous notice" in Clause 2.4 is insufficient to overcome the weight of caselaw holding a carrier cannot rely on the terms of a downstream carrier's BOL.  *See, e.g, Am. Int'l Grp. Eur. S.A. (Italy)*, 756 F. Supp. 2d at 377; *MTS Logistics, Inc.*, 442 F. Supp. 3d at 753.

Danmar argues that Plaintiffs themselves now assert claims based on rights derived from the Pacific Basin BOL, but asserting those rights in this litigation does not mean Plaintiffs were provided sufficient notice at the time they entered into the BOL.  Defendants have not sufficiently demonstrated that the liability limitation in the Pacific Basin BOL was reasonably communicated to Plaintiffs and therefore cannot take advantage of that term.  *See MTS Logistics, Inc.*, 442 F. Supp. 3d at 749 (rejecting argument, where plaintiffs had never received the BOL at issue, that a forum selection clause "was reasonably communicated to [plaintiff] because [plaintiff] had been aware of the MTS House Bill of Lading, could access it on the MTS's website, and is -- as a party entering into an agreement with MTS -- charged with knowing and understanding the contents of such an agreement").  Partial summary judgment is granted to Danmar based on the limitation of liability in the Danmar BOL.

### 5. MTSA Liability

The motion of Air Express for partial summary judgment limiting its liability to $500 per package is denied.  Contrary to the argument and objection of Air Express, liability under the MTSA is not limited by the COGSA $500 liability limitation.  Instead, the applicable limitation is the higher amount of 8.33 Special Drawing Rights per kilo, contained in Clause 6.3 of the MTSA, as the Report correctly finds.

Air Express objects that the Report improperly views the MTSA as a BOL instead of a freight forwarding contract. Air Express argues that when properly considered as a freight forwarding contract, COGSA's liability limitations should apply because the MTSA adopts COGSA without limitation. This argument is unpersuasive because COGSA does not apply to goods carried on deck, whether the contract at issue is a BOL or otherwise. The MTSA, in Section 6.3, adopts COGSA as the governing law related to liability. As discussed above, COGSA excludes from the definition of "goods" "cargo which by the contract of carriage is stated as being carried on deck and is so carried." 46 U.S.C App. § 1301(c). Even considering Air Express's argument that the MTSA is not a contract of carriage or BOL, the relevant contracts of carriage -- i.e., the Danmar BOL and the Pacific Basin BOL -- state that the goods will be carried on deck and they were carried on deck, rendering COGSA's liability provisions inapplicable here.

Defendants are unpersuasive in arguing that the MTSA means to avoid this limitation and apply COGSA's liability limitation to cargo carried on deck. Defendants could have explicitly applied COGSA to on-deck cargo in the MTSA but did not do so. Instead, the provision states: "International transportation by air . . . is subject to and governed with the force of law by the liability provisions contained in the following international conventions or statutes, as applicable and without limitation: . . . the United States Carriage of Goods by Sea Act . . . . For all other Services not governed by a specific statute or international convention, Company's liability shall be limited to 8.33 SDR per kilo." Defendants argue in essence that "without limitation" means that the internal limitations in COGSA should be disregarded. That is not a reasonable interpretation of the MTSA language. The provision means that the relevant laws that may be applicable are not limited to those explicitly listed in the clause, not that inherent limitations on

17

the scope of those laws do not apply. *See Norfolk S. Ry. Co.*, 543 U.S. at 31 ("[C]ontracts for carriage of goods by sea must be construed like any other contracts: by their terms and consistent with the intent of the parties."); *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 558 (2d Cir. 2000) ("[A]n interpretation that gives a reasonable and effective meaning to all terms of a contract is preferable to one that leaves a portion of the writing useless or inexplicable."); Black's Law Dictionary 831 (9th ed. 2009) ("The participle *including* typically indicates a partial list, such as 'the plaintiff asserted five tort claims, including slander and libel.' But some drafters use phrases such as *including without limitation* and *including but not limited to* -- which mean the same thing." (emphasis in original)). The MTSA provision also notes that these laws govern only "as applicable." By its terms, COGSA's liability limitation is inapplicable. Therefore, the Report's recommendation to deny partial summary judgment to Air Express is justified. The MTSA's limitation of 8.33 Special Drawing Rights per package applies, and not the $500 per package limitation of COGSA.

    B. **Remaining Report**

As to the remainder of the Report to which the parties did not object, the Court finds no clear error on the face of the record. Accordingly, these portions are adopted in full. *See* 28 U.S.C. § 636(b)(1) (In reviewing a magistrate judge's recommendations, a District Judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."); Fed. R. Civ. P. 72(b), Advisory Committee Notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); *accord Niles v. O'Donnell*, No. 17 Civ. 1437, 2019 WL 1409443, at *1 (S.D.N.Y. Mar. 28, 2019).

## IV.   CONCLUSION

For the reasons above, the Report is adopted in full.  Defendants' motions for summary judgment are **GRANTED** in part and **DENIED** in part.  Defendants' motions for summary judgment to dismiss all claims are denied.  Defendants' motions for partial summary judgment on the issue of limitation of liability are as follows: granted to Danmar as its liability is limited to $500 per package, (2) granted to the Vessel as its liability is limited to £100 per package and (3) denied to Air Express as its liability is limited to 8.33 Special Drawing Rights per kilo.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 56 and 61.

Dated: September 30, 2024
       New York, New York

                                                        LORNA G. SCHOFIELD
                                             UNITED STATES DISTRICT JUDGE